No. 2471

Second Circuit

BREWSTER & ROACH v. FRED HAMILTON

(December 1, 1925, Opinion and Decree.)
(See pp. 178 and 182, herein.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Evidence—Par. 53, 60, 344.

The burden of proof is on the plaintiff who alleges a verbal contract with defendant by which defendant agreed to pay for anything which his laborers should order from the plaintiff to prove the contract. Defendant's sworn denial of this unbusiness-like contract together with other circumstances make it necessary to give judgment for the defendant.

2. Louisiana Digest—Appeal—Par. 564.

Defendant who does not appeal from the decision of the trial court or move to amend the judgment in the Court of Appeal cannot be granted any relief even though the proof justifies claim.

Appeal from the Third Judicial District Court of Louisiana, Parish of Union, Hon. S. D. Pearce, Judge.

This is a suit to collect the price of goods furnished to defendant and his laborers. There was judgment for plaintiff for the amount furnished defendant which defendant admitted but judgment against plaintiff for the amount of goods purchased by defendant's laborers. Plaintiff appealed.

Judgment affirmed

Elder, Thompson & Digby, of Ruston, attorneys for plaintiffs, appellants.

H. E. Dawkins, of Ruston, attorney for defendant, appellee.

CARVER, J.    Plaintiffs sue defendant for $727.40 for goods furnished during 1923 and 1924, $47.82 to defendant himself and the balance to laborers on his plantation.

Defendant admits liability for the $47.82 but denies it as to the balance, claiming, as to such balance, that he did not authorize the plaintiffs to furnish the laborers the goods sold them.

On the trial there was no written evidence introduced to support plaintiffs' claim and defendant objected to parol testimony offered on the ground that—

"* * * it was an attempt to prove a surety contract and assumption of a debt of a third person, which the law requires must be in writing, and, further, that it is irrelevant and immaterial under the pleadings for the reason that it is therein alleged that the goods were sold and delivered to the defendant Fred Hamilton and no agency is therein set forth."

The district judge overruled the exception and let the testimony in, subject to the objection.

Dan Brewster, one of the plaintiffs, was asked the question:

"I will ask you whether or not Mr. Fred Hamilton authorized you to sell the goods indicated on the account attached to suit No. 8157 which the various parties to whom the goods were delivered. I will ask you to state whether or not Mr. Fred Hamilton authorized you to deliver those goods to those parties and charge them to him?"

And he answered:

"Yes, sir."

And, further:

"Q. Did he tell you that yourself?
"A. I don't know whether it was me or not; I don't remember.
                    *  *  *
"Q. Can you recall his exact words when he told you?
"A. I don't know exactly, but he told me to let his darkies have stuff, and told me who they were, and said he would pay for them."

He first stated several times that this was in January, 1922, but afterwards said he meant 1923, having begun business only in 1923; that he did not remember any

one being present when defendant told him this or whether before this the laborers had gotten any goods or not; that he did not know of defendant's ever inquiring as to the state of the account; and that he did not send a statement until fall.

"Q. Never did ask you another question?

"A. Yes, sir; later in the summer.

"Q. And told you to let them have what they wanted?

"A. He said let them have what he sent them after.

"Q. Did you understand he would send written orders.

"A. No, sir.

Later he was asked:

"Q. Mr. Brewster, had these defendants or any of them traded with your firm on this same basis for any previous year other than that shown on the accounts and come in and settle up without any controversy?

"A. Yes, sir."

Afterwards:

"Q. As far as you are concerned, he didn't tell you especially to let his darkies have anything in 1923, did he?

"A. Not that I remember of now.

"Q. As a matter of fact, you just assumed that when he told you to let them have their stuff in 1922, you assumed that you would let them have it until he told you to stop?

"A. No, sir; he told Mr. Roach.

"Q. He told Roach in 1923?

"A. Yes, sir.

"Q. Were you present?

"A. No, sir; I don't think I was.

"Q. But he didn't tell you in 1923 to let them have anything?

"A. No, sir.

"Q. Were you letting them have stuff in 1923 on the direction he had given you at the first of 1922 or were you letting them have it on the direction he gave Roach?

"A. On what he gave Roach."

In these last questions and answers the witness meant 1923 instead of 1922 and 1924 instead of 1923.

Roach testified as follows:

"Q. Mr. Roach, I will ask you whether or not Mr. Fred Hamilton ever authorized your firm to let his hands, darkies working on his farm, have supplies and charge these supplies direct to Mr. Fred Hamilton?

"A. He did.

"Q. Did he authorize you to do that in the years 1923 and 1924?

"A. In the spring of 1924 I asked him about his hands, told him they were going pretty strong with their accounts, and he said 'all right I have got to supply them out of some man's store, it might as well be Brewster and Roach and charge them to me'." ·

On cross-examination he testified:

"Q. You say Mr. Fred Hamilton at the beginning of the year 1924 told you to let them go ahead, he had to furnish them out of somebody's store?

"A. Yes, sir.

"Q. What part of 1924 was that?

"A. Late spring.

"Q. You had already furnished them up to that time?

"A. Yes, sir, by his orders.

"Q. Have you got those written orders?

"A. They were not written orders, he told Mr. Brewster.

"Q. Where, if at any place, did he tell Mr. Brewster to let them have anything for 1923?

"A. I have Brewster's word.

\* \* \*

"Q. Who was present besides yourself and Mr. Hamilton when he told you he had to furnish his hands out of somebody's store?

"A. Truston Bryant.

"Q. Did he give you then a written obligation to pay what they had already traded?

"A. No, sir.

"Q. Did he tell you then and there that he would pay for what they had already traded?

"A. Yes, sir.

"Q. He told you that verbally that he would pay for what they had already traded?

"A. Yes, sir.

"Q. And told you verbally to let them have other stuff?

"A. Yes, sir.

"Q. Did he ever send you any written orders of any kind during the whole time?

"A. No.

"Q. Did he ever say anything to Mr. Hamilton about what his hands were trading after that time?

"A. Not until in the fall.

\* \* \*

"Q. This is the only occasion in 1924, this is the only occasion that he told you anything about letting his hands have stuff out of the store in 1924?

"A. Yes.

Truston Bryant testified as follows:

"Bob told Fred that he was going pretty strong, the negroes was, and asked him if it was all right, and Fred says, just go ahead and let them have it, I will pay it at the end of the year."

On cross-examination he was asked:

"Q. You understood that they had already made accounts?

"A. I suppose they had the way they were talking."

Cleve Hammons testified as follows:

"Q. Mr. Hammons, did Mr. Fred Hamilton ever say anything to you about an account he had with Brewster and Roach?

"A. Yes, sir.

"Q. What did he say?

"A. I gave him a statement, and he said 'my cotton is in the Bureau, I haven't got any money right now, and says if they don't send me some in a few days, I will go to Monroe and get some and pay you boys, I owe them boys up yonder probably more than I do you."

"Q. Was he speaking of Brewster and Roach?

."A. I suppose so; they were the only ones there.

"Q. He told you he owed Brewster and Roach more than he did you?

"A. Probably more, he said he didn't know how much it was.

"Q. Do you remember about how much he owed you at that time?

"A. I think it was either three or four hundred dollars, I wouldn't be positive.

"Q. When was it he told you that?

"A. In the fourth or fifth month in last year, 1924."

J. W. Haile testified that he collected for Brewster & Roach and talked to defendant about his account; that he did not have an itemized statement of it but just a statement on the day book; and, further—

"The best I remember he said he wouldn't settle the account just as it stood, just as the amount was; he said it looked too big, and he took me in his office and opened his books and said that the red ink was cash money he advanced his hands and that there was some money advanced that is quite a bit during the year; it seemed that it went more than four or five months, I didn't notice especially."

"Q. After discussing this account with him, did he deny being responsible for the account by reason of the fact that it was got by his negroes?

"A. No, sir; he didn't deny the account."

The accounts sued on are as follows:

That of defendant himself, $47.82.

Fred Hamilton, by J. D. Jackson, $68.30, running from October 29, 1923, to September 10, 1924.

Fred Hamilton, by Albert Woods, $43.94, running from October 29, 1923, to July 19, 1924.

Fred Hamilton, by Dave Woods, $141.40, running from November 3, 1923, to October 6, 1924.

Fred Hamilton, by William Jackson, $55.50, running from October 27, 1923, to July 26, 1924.

Fred Hamilton, by Bud Manning, $59.60, running from October 26, 1923, to May 25, 1924.

Fred Hamilton, by Jessie Wilson, $118.65, running from October 29, 1923, to October 15, 1924.

Fred Hamilton, by Panola Griffin, $8.58, running from October 27, 1923, to November 19, 1923.

Fred Hamilton, by Will Archie, $117.45, running from July 22, 1923, to October 13, 1924.

Fred Hamilton, by Lillie Jenkins, $14.75, running from April 18, to October 15—presumably in 1924.

Fred Hamilton, by Abe Archie, $17.50, running from May 10, 1924, to June 14, 1924.

Defendant denies authorizing plaintiffs to sell his laborers goods on his account at any time; says he does not remember the remark testified to by Hammons; admits that in the fall of 1923, he paid plaintiffs six or seven hundred dollars for his laborers, but says he paid it at their request, they having that much coming to them and he was not responsible for it; says he did not know of the claim sued on until he received statement from plaintiffs in the fall of 1924; that he offered Haile a check for his personal account but made no promise or statement as to the rest of the claim.

He further says that he advanced his laborers himself what he thought their crops justified, which was $200 per horse worked; that Manning, Dan Woods, Wilson, Albert Woods, William Jackson and Will Richie worked two horses each, and Dellie Simpson four horses; that J. D. Jackson worked for his father, William Jackson, and that Lillie Jenkins was cooking for wages.

Plaintiff's theory is that defendant gave his laborers, even the one working for wages, carte blanche to get on his account from plaintiffs whatever they might wish, without limit either as to time or amount, and without inquiring or being informed as how they were using this extraordinary privilege; and this, too, while he was supplying them himself what he thought they needed and their crops warranted.

The proof of so unusual and unbusinesslike a contract should be strong, indeed, and in this case we do not find it strong enough to overcome defendant's sworn denial.

Haile, in his testimony, does not go to the extent of saying that defendant made an admission, but, if so, the law regards such testimony as the weakest sort of evidence, and this latter applies also to the testimony of Hammons.

Roach says the conversation to which he and Bryant testify, occurred in the late spring. At that time a considerable part of the goods had already been sold, namely:

Up to March 22, $41.40 of the $68.30 J. D. Jackson account.

Up to March 21, $16.65 of the $43.94 Albert Woods account.

Up to April 2, $10.30 out of the $23.75 Dave Woods account.

Up to April 10, $95.85 out of the $141.40 Dellie Simpson account.

Up to April 12, $48.75 out of $56.50 William Jackson account.

Up to April 19, $49.90 out of $59.60 Bud Manning account.

Up to April 12, $74.60 out of $118.65 Jessie Wilson account.

Up to April 24, $52.00 out of $117.45, Will Richie account.

Roach's testimony does not fix the time when he claims the conversation occurred with defendant, except to say that it was in the late spring.

As to the goods furnished, before that conversation, there is no pretence that defendant authorized the sale, unless we are to accept the testimony of Brewster as to the arrangement in January and unless, further, we should presume that the authority thus given was intended to extend over into the year 1924.

It will be observed that the earliest item on any of the accounts was October 26, 1923. Defendant had evidently paid all claims up to that time.

While Brewster might have understood that the arrangement made in the previous January, if so made, was to extend over into 1924, and that advances for that year were to begin as early as October 26, 1923, we cannot believe, on the proof submitted in this case, that defendant so intended.

As was the case in the Joe Hamilton case this day decided, an inspection of the account sued on shows relatively a small amount of provisions, which usually constitute the main portion of advances made to laborers on plantations.

As stated in the case of the same plaintiffs versus Wilbur Hamilton, this day decided, this case was consolidated with that one and with the case of the same plaintiffs against Joe Hamilton.

In the Wilbur Hamilton case, we give additional reasons which, in our opinion, weaken the plaintiffs' side and strengthen the defendant's side of the case, which reasons need not be repeated here.

As in the Wilbur Hamilton case, defendant herein made a tender which was not sustained by the district judge, and complains of that and of being taxed with any of the costs; but were he entitled to this relief in the lower court, about which we express no opinion, we cannot grant it here because he has not appealed nor moved to amend the judgment.

The district judge gave judgment for plaintiffs for defendant's personal account of $47.82 besides interest, rejecting plaintiffs' demand for the balance, and condemned defendant to pay the costs.

The judgment is affirmed.